**Pilar C. French**, OSB No. 962880
frenchp@lanepowell.com
**Brian T. Kiolbasa**, OSB No. 112890
kiolbasab@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Mortgage Electronic
Registration Systems, Inc. and Wells Fargo Bank, N.A.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ALEKSANDER MIKITYUK and OLITITSA MIKITYUK, individuals,** | Case No. 3:12-cv-1518-JE |
| Plaintiffs, | Mortgage Electronic Registration Systems, Inc.'s and Wells Fargo Bank, N.A.'s MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |
| v. | |
| **NORTHWEST TRUSTEE SERVICES, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WELLS FARGO BANK, N.A.,** | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 2

    A.    Plaintiffs and Victor Mikityuk Obtain $165,660 Loan in 2003............................2

    B.    Plaintiffs Default by Failing to Make Monthly Payments and Non-Judicial Foreclosure is Commenced in 2009................................................................2

    C.    The Property is Sold to a Third Party in September 2010. ....................................3

    D.    Plaintiffs File Their Complaint in Multnomah County Circuit Court on or About June 6, 2012; Later Removed to This Court. ...............................................3

    E.    MERS and the MERS® System. ..........................................................................3

III.  ARGUMENT .....................................................................................................5

    A.    ORS 86.770 (Which Was Not at Issue in *Niday*) Bars Plaintiffs' Challenge to a Completed Foreclosure of Which They Had Proper Statutory Notice. ...........5

        1.    The text of ORS 86 ...............................................................................6

        2.    The context of ORS 86 ..........................................................................8

            a.    Prior judicial interpretations become part of the context................8

            b.    The OTDA's comprehensive framework confirms that plaintiff's claim is barred by ORS 86.770 ......................................9

            c.    The legislative history of ORS 86.770 likewise confirms that plaintiffs' claim is barred .....................................................12

    B.    The Amended Complaint Must Be Dismissed For Failure to Join an Indispensable Party. ..........................................................................................14

        1.    Standard of Review ..............................................................................14

        2.    NW Property is an indispensable party because its established interest in the Property is threatened by plaintiffs' lawsuit .....................15

    C.    Each of Plaintiff's Individual UTPA Claims Fail to State a Claim for Relief.......15

        1.    Legal Standard .....................................................................................16

        2.    Plaintiffs' attempt to state a claim for relief under the UTPA fail for a host of reasons ..............................................................................16

            a.    Plaintiffs do not have standing to bring a claim under ORS 646.607 ....................................................................................16

            b.    Plaintiffs' UTPA claims are time-barred .......................................17

            c.    Plaintiffs also fail to state a claim under the UTPA......................18

IV.   CONCLUSION...................................................................................................21

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

707220.0091/5543159.2

# TABLE OF AUTHORITIES

## Cases

*Accuride Int'l, Inc. v. Accuride Corp.*,
  871 F.2d 1531 (9th Cir. 1989) ............................................................20

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ...................................................................15

*Baggao v. Mascaro*,
  77 Or. App. 627, 714 P.2d 261 (1986) .................................................8

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ........................................................15, 16

*Bell v. ReconTrust Co.*,
  N.A., No. 11-6390-HO, 2012 U.S. Dist. LEXIS 26074 (D. Or. Feb. 29, 2012).......................8

*Bolt v. Influence, Inc.*,
  333 Or. 572, 43 P.3d 425 (2002) ........................................................7

*Cachil Dehe Band of Wintun Indians v. California*,
  547 F.3d 962 (9th Cir. 2009) ..........................................................15

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ........................................................4, 20

*Deutsche Bank Nat'l Trust Co. v. Kruse*,
  Civ. No. 12-0005300E, Order at 3 (Jackson Cnty. Cir. Ct. May 16, 2012).............................8

*Dietrich v. ReconTrust Company, N.A.*,
  Case No. 11CV0801 (Deschutes Cnty. Cir. Ct. July 10, 2012).................................8

*E.E.O.C. v. Peabody W. Coal Co.*,
  610 F.3d 1070 (9th Cir. 2010) *cert. denied*,
  132 S. Ct. 91, 181 L. Ed. 2d 21 (U.S. 2011) ........................................14

*Freeman v. Names (In re Names)*,
  No. 10-6244, 2011 WL 1837819 (Bankr. D. Or. May 13, 2011) ............................8

*Horton v. Nelson*,
  252 Or. App. 611 (Oct. 3, 2012) .......................................................16

*In re Marriage of Polacek*,
  349 Or. 278, 243 P.3d 1190 (2010) ....................................................8

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200
707220.0091/5543159.2

*In re MERS Litig.*,
    MDL Docket No. 09-21119-JAT, 2011 WL 4550189 (D. Ariz. Oct. 3, 2011) ........................4

*Jackson v. MERS*,
    770 N.W.2d 487 (Minn. 2009) .................................................................................................4

*Marcilionis v. Farmers Ins. Co.*,
    318 Or. 640, 871 P.2d 470 (1994) ..........................................................................................6

*McCulloch v. Price Waterhouse LLP*,
    157 Or. App. 237, 971 P.2d 414 (1998)................................................................................17

*McShan v. Sherrill*,
    283 F.2d 462 (9th Cir. 1960) ................................................................................................15

*MERSCORP, Inc. v. Romaine*,
    861 N.E.2d 81 (N.Y. 2006) ....................................................................................................4

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986) ..................................................................................................3

*Moss v. U.S. Secret. Serv.*,
    572 F.3d 962 (9th Cir. 2009) ................................................................................................16

*Neidig v. Superior Nat'l Ins. Co.*,
    343 Or. 434, 173 P.3d 123 (2007) ........................................................................................20

*Niday v. GMAC Mortgage, LLC*,
    251 Or. App. 278, 284 P.3d 1157 (2012), *rev. allowed* 352 Or. 454 (2012) ..................5, 8, 19

*NW Property Wholesalers, LLC v. Spitz*,
    252 Or. App. 29, 287 P.3d 1106 (2012)..................................................................................8

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998), *superseded by statute on other grounds*,
    *Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) ...........................................3

*PGE v. Bureau of Labor and Industries*,
    317 Or. 606, 859 P.2d 1143 (1993) ........................................................................................5

*Shields v. Barrow*,
    58 U.S. 130 (1855)................................................................................................................14

*Staffordshire Investments, Inc. v. Cal-Western Reconveyance Corp.*,
    209 Or. App. 528, 149 P.3d 150 (2006)..................................................................................9

PAGE iii -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

707220.0091/5543159.2

*State v. Fries*,
    344 Or. 541, 185 P.3d 453 (2008) ............................................................6

*State v. Gaines*,
    346 Or. 160, 206 P.3d 1042 (2009) .................................................5, 6, 11

*Tee v. Albertson's, Inc. (In re Tee)*,
    148 Or. App. 384, 939 P.2d 668 (1997).................................................7

*Wright v. Assocs. Fin. Servs. Co.*,
    59 Or. App. 688, 651 P.2d 1368 (1982), *superseded by statute on other grounds as
    noted in Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085 (D. Or. 2011) ..................8

**Statutes**

15 U.S.C. § 1111 ....................................................................................20

15 U.S.C. § 1127 ....................................................................................20

ORS 12.020(1) ......................................................................................18

ORS 86.735............................................................................................7

ORS 86.739.......................................................................................10, 11

ORS 86.740........................................................................................9, 10

ORS 86.742...........................................................................................10

ORS 86.750............................................................................................9

ORS 86.753...........................................................................................11

ORS 86.757...........................................................................................10

ORS 86.770 ...................................................................................... passim

ORS 88.030...........................................................................................10

ORS 174.010.......................................................................................7, 11

ORS 174.020........................................................................................5, 12

ORS 646.605.....................................................................................16, 18

ORS 646.607.....................................................................................16, 17

ORS 646.608............................................................................16, 17, 18, 19, 21

PAGE iv -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

ORS 646.638 .................................................................................................16, 17, 18

ORS 647.005 ..............................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................15

Fed. R. Civ. P. 12(b)(7) ...................................................................................1, 13, 14

Fed. R. Civ. P. Rule 19 .......................................................................................14, 15

Webster's Third New International Dictionary (Philip Babcock Gove, ed., Merriam-
    Webster Inc. 2002) ..............................................................................................6

**LANE POWELL** PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

707220.0091/5543159.2

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A. ("Wells Fargo") hereby presents their memorandum in support of their motion to dismiss plaintiffs' Amended Complaint (ECF No. 22).

## I.  INTRODUCTION

This case arises from a completed non-judicial foreclosure of residential real property that was once owned by plaintiffs Aleksander Mikityuk and Olititsa Mikityuk ("plaintiffs").  The real property at issue was sold to a third party in September 2010, but now, over two years later, plaintiffs attempt to bring various meritless claims in an attempt to challenge the completed sale.

For the following reasons, more fully discussed below, the Amended Complaint should be dismissed:

1.      Because plaintiffs received proper notice of the sale, their interest in the property was terminated as a matter of law, and their attempt to challenge the completed sale is barred by operation of the Oregon Trust Deed Act ("OTDA").

2.      Even if plaintiffs could attempt to challenge the completed foreclosure (which they cannot), plaintiffs have failed to name an indispensable party to the lawsuit.  The foreclosure was completed over two years ago, and the property was conveyed to a third party purchaser, NW Property Wholesalers, LLC ("NW Property").  Plaintiffs' failure to name the purchaser of the property as a defendant in this case is fatal to their claims because plaintiffs seek a declaration that the foreclosure sale was void, but have not named the party that risks having its ownership interest invalidated by this litigation.  As a result, the claims raised, even if they were valid, can only be resolved if NW Property is named as a party to this litigation, and because plaintiffs have failed to do so, the Amended Complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(7).

3.      Even if the defects above did not bar plaintiffs' claims, certain of plaintiffs' individual claims would still fail for multiple reasons.  Two of plaintiffs' claims in the Amended

PAGE 1 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Complaint attempt to state a claim under Oregon's Unlawful Trade Practices Act ("UTPA"), but the UTPA does not provide for a private right of action for the statutory provisions plaintiffs attempt to enforce.   Furthermore, plaintiffs have not alleged facts demonstrating that their purported claims are timely, and in any event, plaintiffs have not made sufficient factual allegations to bring their claim within the scope of the UTPA.

As a result of the foregoing, and as discussed below, plaintiffs have failed to state a claim for relief, and dismissal of this lawsuit with prejudice is proper.

## II. <u>STATEMENT OF FACTS</u>[1]

**A.    Plaintiffs and Victor Mikityuk Obtain $165,660 Loan in 2003.**

On or about May 12, 2003, plaintiffs and Victor Mikityuk obtained a loan in the amount of $165,660 (the "Loan") from Mortgage Market, Inc. ("MMI"), which was secured by a Deed of Trust on the property located at 1041 NE 106th Avenue, Portland, Oregon 97220 (the "Property").  (Am. Compl. ¶ 8; *id.* Ex. A.)

The Deed of Trust identified MERS as the beneficiary, and identified Pacific Northwest Title of Oregon, Inc., as the trustee.  (*Id.*)  As a condition of the Deed of Trust, plaintiffs agreed to pay the debt evidenced by the Note.  (*Id.*)  Plaintiffs further agreed that, if they failed to make their monthly payments, plaintiffs would be in default on the Loan and that the lender, or its successors or assigns, could proceed with a non-judicial foreclosure against the Property.  (*Id.* at 7.)

**B.    Plaintiffs Default by Failing to Make Monthly Payments and Non-Judicial Foreclosure is Commenced in 2009.**

In January 2009, plaintiffs defaulted on the Loan by failing to make their monthly payments called for under the Loan's terms.  (Am. Compl. Ex. D at 1.)  On June 25, 2009, MERS executed an Assignment of Deed of Trust, conveying its interest in the Property to Wells

---

[1] For purposes of this Motion, Wells Fargo and MERS assume the truth of plaintiffs' allegations, but only to the extent that they are plausibly supported with sufficient factual specificity.

PAGE 2 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Fargo.  (Am. Compl. ¶ 12; *id.* Ex. B.)  Wells Fargo then appointed Northwest Trustee Services, Inc. ("NWTS") to serve as successor trustee.  (Am. Compl. ¶ 17; *id.* Ex. C.)  A Notice of Default and Election to Sell was thereafter prepared and recorded by NWTS, and notice of the pending trustee's sale was provided by NWTS.  (Am. Compl. ¶¶ 19–21; *id.* Ex. E.)

**C.    The Property is Sold to a Third Party in September 2010.**

On September 17, 2010, the Property was sold at a trustee's sale by NWTS.  (Declaration of Brian T. Kiolbasa in Support of Motion to Dismiss[2] ("Kiolbasa Decl.") Ex. 1.)  A Trustee's Deed was issued to the high bidder, NW Property, which was recorded in the Multnomah County Official Records on November 16, 2010, as document 2010-144704.  (*Id.*)

**D.    Plaintiffs File Their Complaint in Multnomah County Circuit Court on or About June 6, 2012; Later Removed to This Court.**

Plaintiffs' original Complaint was filed in Multnomah County Circuit Court, and is dated June 6, 2012.  Prior counsel for Wells Fargo and MERS removed the action to this Court on August 22, 2012.  (ECF No. 1.)  Plaintiffs' original Complaint contained only two claims for relief:  (1) for wrongful foreclosure and (2) for declaratory relief.  (*Id.*)  Plaintiffs filed their Amended Complaint on November 16, 2012.  (ECF No. 22.)

**E.    MERS and the MERS® System.**

To better understand the context of this action, it is helpful to have an understanding of MERS, MERSCORP,[3] and the MERS® System.

---

[2] The exhibits attached to the Kiolbasa Declaration are all properly considered on this motion to dismiss because they are recorded in the public records or the Complaint relies on them, or both. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds*, *Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) (court may consider documents on which plaintiff's claims are predicated "even if the plaintiff's complaint does not explicitly refer to" those documents); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (when determining whether complaint fails to state a claim, court may take "judicial notice of matters of public record outside the pleadings").

[3] MERSCORP, Inc. is now known as MERSCORP Holdings, Inc. ("MERSCORP").  Plaintiffs' Amended Complaint includes allegations relating to MERSCORP, but MERSCORP does not appear in the caption and, on information and belief, MERSCORP has not been properly served.

PAGE 3 -    MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

When a mortgage lender loans money to a home buyer, two documents are obtained from the borrower:  (1) a promissory note; and (2) a mortgage instrument granting secured interests in the property as collateral to repay the note (here, a deed of trust).  *See Cervantes v. Countrywide Home Loans*, *Inc*., 656 F.3d 1034, 1038 (9th Cir. 2011).  The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and as such, it is often bought and sold.  *Id*.  The mortgage or secured instrument, as distinguished from the note, establishes a lien on the property that secures the repayment of the loan.  *Id*.  It is the mortgage, not the note, that is then recorded in the public, local land records.  *Id*.

MERS (Mortgage Electronic Registration System, Inc.) serves as the mortgagee of record, on behalf of, or as the nominee or agent for, mortgage lenders who register loans in the MERS® System and those lenders' successors and assigns ("MERS Members").  MERSCORP Holdings, Inc., owns the trademarked MERS® System, which is "a private electronic database * * * that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011); *see also Jackson v. MERS,* 770 N.W.2d 487, 490–91 (Minn. 2009); *MERSCORP, Inc. v. Romaine,* 861 N.E.2d 81, 83 (N.Y. 2006).  The shareholders of MERSCORP and the members of the MERS® System include "[m]any of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans."  *Cervantes*, 656 F.3d at 1039; *see also In re MERS Litig.,* MDL Docket No. 09-21119-JAT, 2011 WL 4550189, at *3 (D. Ariz. Oct. 3, 2011).  MERS is a wholly-owned subsidiary of MERSCORP.  *In re MERS*, 2011 WL 4550189, at *3.

The MERS mark is a federally registered service mark owned by MERSCORP and used in connection with the unique service it provides.  The federal registration for the MERS mark issued on July 29, 1997, and is incontestable.  (Kiolbasa Decl. at Ex. 2.)  The MERS® System was designed to improve the efficiency and to lower the cost of business in the primary and secondary mortgage markets.  *Jackson*, 770 N.W.2d at 490.

PAGE 4 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## III.  **ARGUMENT**

**A.    ORS 86.770 (Which Was Not at Issue in *Niday*) Bars Plaintiffs' Challenge to a Completed Foreclosure of Which They Had Proper Statutory Notice.**

As a threshold issue, although plaintiffs place great reliance in it, the Court of Appeals' recent decision in *Niday v. GMAC Mortgage, LLC*, 251 Or. App. 278, 284 P.3d 1157 (2012), *rev. allowed* 352 Or. 454 (2012) is not dispositive of the instant matter because it does not address the threshold application of ORS 86.770.[4]  In *Niday*, the non-judicial foreclosure sale at issue in that case was still pending when the legal challenge was made.  Accordingly, ORS 86.770, which prescribes the legal effect of a *completed foreclosure* on the property interests of those who receive notice of the sale, was not at issue in *Niday*.  Here, in contrast, ORS 86.770 applies, and the statute bars plaintiffs' claim because they received statutory notice and the sale was completed.

The impact of ORS 86.770 on a party's ability to challenge a completed foreclosure is a matter of statutory construction.  As this Court well knows, Oregon courts look to discern the intent of the legislature when analyzing statutes.  *See* ORS 174.020.  In construing statutes, Oregon's courts follow ORS 174.020 and the leading cases on statutory interpretation, *PGE v. Bureau of Labor and Industries*, 317 Or. 606, 859 P.2d 1143 (1993), *State v. Gaines*, 346 Or. 160, 206 P.3d 1042 (2009), and their progeny.

The text and context of a statute is the starting point for construing a statute and is the best evidence of the Legislature's intent.  *Gaines*, 346 Or. at 171–73.  When evaluating statutory text, the court applies well-established rules of construction—such as the requirement not to insert into the statute what has been omitted or omit from the statute what has been inserted.  *PGE*, 317 Or. at 611. "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning."  *Id.* (internal citations omitted).  Following enactment of ORS 174.020, a

---

[4] Defendants continue to believe that *Niday*, which is currently under review by the Oregon Supreme Court, is incorrect.  In any event, *Niday* is not controlling here for the additional reason that the Court of Appeals in *Niday* specifically declined to address the estoppel issue, 251 Or. App. at 293 n.12.

PAGE 5 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

party is free to proffer legislative history to the court, and the court will consult it after examining text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis. *Gaines*, 346 Or. at 170–72.

1.    **The text of ORS 86.770 confirms that plaintiffs' claim is statutorily barred.**

In this case, the legislative intent is readily discerned from the text of the statute. ORS 86.770(1) provides:

> *If, under ORS 86.705 to 86.795, a trustee sells property covered by a trust deed, the trustee's sale forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given* under ORS 86.740 and 86.750 or to a person that claims an interest by, through or under the person to which notice was given. A person whose interest the trustee's sale foreclosed and terminated may not redeem the property from the purchaser at the trustee's sale. *A failure to give notice to a person entitled to notice does not affect the validity of the sale as to persons that were notified.*

(Emphasis added.)

By the statute's plain and ordinary language, the trustee's sale "forecloses and terminates" the interest in the property of a person who received the required statutory notice. These terms are not expressly defined in the OTDA. The Merriam-Webster Dictionary defines "foreclose" as "to shut out" and "to bar or cut off" and defines "terminate" as "to bring to an ending" and "to form the end or conclusion of."[5] Webster's Third New International Dictionary 888, 2359 (Philip Babcock Gove, ed., Merriam-Webster Inc. 2002). The Legislature thus intended that, once the trustee's sale occurs, any party with proper notice no longer has any interest in the property—that party's interest, and any redemption rights, are wholly extinguished.

---

[5] Principles of statutory construction permit the Court to resort to a common use dictionary to define terms within a selected definition. *See, e.g.*, *Marcilionis v. Farmers Ins. Co.*, 318 Or. 640, 645, 871 P.2d 470 (1994) (resorting to Webster's Third New International Dictionary to clarify the meaning of "preposition" where several were used in a particular statute); *accord State v. Fries*, 344 Or. 541, 545–46, 185 P.3d 453 (2008) (referring to dictionary definition of "possession" where legislature defined "possess" in part to mean "to have physical possession").

PAGE 6 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Legislature's intent to prohibit post-sale challenges by parties who received notice but failed to act prior to the completion of sale is bolstered by the statute's further provision that "[a] failure to give notice to a person entitled to notice does not affect the validity of the sale as to persons that were notified."  ORS 86.770.  The plain meaning of that sentence is clear— regardless of who else may (or may not) be able to challenge the validity of the sale, a party who receives notice of sale is barred from bringing a judicial action to challenge the sale after it is completed.

Plaintiffs may attempt to argue that ORS 86.770 does not apply *unless* the trustee proves that it has satisfied all of the prerequisites set forth in ORS 86.735.  But such an argument violates the cardinal prohibition against inserting what has been omitted, and omitting what has been inserted, from the statute.  ORS 174.010; *Tee v. Albertson's, Inc. (In re Tee)*, 148 Or. App. 384, 389, 939 P.2d 668 (1997) (courts are "forbidden, both by statutory command and by constitutional principles, to insert language that the legislature, whether by design or by default, has omitted") (quoting *Deluxe Cabinet Works v. Messmer (In re Messmer)*, 140 Or. App. 548, 553, 915 P.2d 1053 (1996)).  ORS 86.770 does not contain any qualifications or exceptions, and such a construction—which would enable borrowers to avoid the bar simply by asserting non-compliance with another provision of the OTDA—would impermissibly render ORS 86.770 meaningless.  *See, e.g.*, *Bolt v. Influence, Inc.*, 333 Or. 572, 581, 43 P.3d 425 (2002) (courts should avoid a construction that renders a statutory provision meaningless).

To construe the statute to carve out an exception permitting post-sale challenges for those individuals who received notice but who base their claim of invalidity on the purported failure to comply with ORS 86.735 is to insert an exception into the statute which is simply not there, and to ignore the plain language that is contained in the statute, which makes clear that only individuals who did not receive notice may bring a post-sale challenge.

PAGE 7 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The plain language of ORS 86.770 controls. It establishes that a party who receives notice of sale may not wait until after the sale has occurred to challenge its validity *on any ground.*

**2.      The context of ORS 86.770 confirms that plaintiffs who received notice may not bring a post-sale challenge.**   "A statute's context includes other provisions of the same or other related statutes, the pre-existing statutory framework, and prior opinions of this court interpreting the pertinent statutory wording."   *In re Marriage of Polacek,* 349 Or. 278, 284, 243 P.3d 1190 (2010) (*en banc*) (internal citations omitted).

**a.      Prior judicial interpretations become part of the context.**   The proposition that ORS 86.770 bars post-sale challenges by those who receive notice of sale is not new.   Indeed, this proposition is supported by several Oregon appellate decisions.   Construing ORS 86.770, the Court of Appeals previously concluded that "a trustee's foreclosure sale has the same effect as a judicial sale on foreclosure of a mortgage.   It terminates all interest in the property covered by the trust deed of all persons to whom notice is given, but has no effect on the interests of persons to whom notice is not given."   *Baggao v. Mascaro*, 77 Or. App. 627, 630–31, 714 P.2d 261 (1986); *see also Wright v. Assocs. Fin. Servs. Co.*, 59 Or. App. 688, 696, 651 P.2d 1368 (1982) (holding that, under the OTDA, borrowers who were notified of their option "to reinstate a loan and forestall a sale by paying, prior to five days before the scheduled sale, all amounts past due" and "declined to exercise" that option have "lost their opportunity to protect their equity in the property"), *superseded by statute on other grounds as noted in Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085, 1092 (D. Or. 2011).[6]

---

[6] *See also Bell v. ReconTrust Co.*, N.A., No. 11-6390-HO, 2012 U.S. Dist. LEXIS 26074, at *7 (D. Or. Feb. 29, 2012) ("the trustee's sale of the property forecloses and terminates plaintiff's interest in the property because he received the required notice") (citing ORS 86.770(1)); *Freeman v. Names (In re Names)*, No. 10-6244, 2011 WL 1837819, at *4 (Bankr. D. Or. May 13, 2011) (plaintiff, who had actual notice of the sale, was not permitted to challenge a completed sale); *Dietrich v. ReconTrust Company, N.A.*, Case No. 11CV0801, Order at 2 (Deschutes Cnty. Cir. Ct. July 10, 2012) ("Plaintiff lacks standing under ORS 86.770 to bring the suit challenging a completed foreclosure sale.") (Kiolbasa Decl. Ex. 3); *Deutsche Bank Nat'l Trust Co. v. Kruse*, Civ. No. 12-0005300E, Order at 3 (Jackson Cnty. Cir. Ct. May 16, 2012)

PAGE 8 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

The Court of Appeals has not wavered in its prior interpretation of ORS 86.770 even in the wake of *Niday*.  In *NW Property Wholesalers, LLC v. Spitz*, 252 Or. App. 29, 287 P.3d 1106 (2012) (a post-*Niday* case), the Court of Appeals was called upon to interpret ORS 86.770 again. The *Spitz* court expressly recognized that ORS 86.770 provides that "a trust deed foreclosure sale would foreclose and terminate the interests of those to whom notice [was] given under ORS 86.740 and ORS 86.750."  252 Or. App. at 36 (internal quotations and emphasis omitted); *see also id.* at 37 (noting that ORS 86.740 and ORS 86.750 are "two notice statutes in ORS 86.770 through which the interests in property of people who receive notice are foreclosed and terminated by a trustee's trust deed foreclosure sale").  Although the court concluded that the particular means of serving notice on the occupant who was challenging the sale in *Spitz* was insufficient,[7] the Court reaffirmed the plain meaning of ORS 86.770: if notice of the trustee's sale is proper, the trustee's sale will terminate the parties' interest in the property.  *Id.* at 36–37, 40.

      **b.**    **The OTDA's comprehensive framework confirms that plaintiff's claim is barred by ORS 86.770.**  The OTDA reflects a careful balancing of two important policies that are necessarily in tension with each other:  (1) protecting borrowers "from the unauthorized foreclosure and wrongful sale of property," and (2) "providing creditors with a quick and efficient remedy against a defaulting [borrower]."  *Staffordshire Investments, Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542, 149 P.3d 150 (2006).

      To safeguard against wrongful foreclosure, the Oregon Legislature incorporated two specific protections into the OTDA:  notice and an opportunity to cure.  Grantors, and other

---

(rejecting post-sale challenge to foreclosure, alleging unrecorded assignments of the trust deed, brought as defense to unlawful detainer proceeding:  "Once the foreclosure sale process was complete, the [borrowers'] interests in the property were terminated.") (citing ORS 86.770) (Kiolbasa Decl. Ex. 4).

[7] Here, plaintiffs have not alleged that they failed to receive proper notice.  In fact, the Amended Complaint shows that effective notice under the OTDA was provided.  (Am. Compl. ¶¶ 18–21.)

PAGE 9 -   MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

parties with property interests, are each entitled to notice of the sale and an opportunity to cure five days prior to the date of sale. ORS 86.753. If the default is cured, the trustee must cancel the foreclosure and reinstate the deed of trust. ORS 86.753(2). If the default is not cured, the trustee can proceed with the foreclosure sale. And if the sale is completed, all parties who had notice are barred from contesting "the validity of the sale." ORS 86.770(1). This helps to ensure that the purchaser at the trustee's sale and all subsequent owners obtain good title, promoting the sale and marketability of real estate in Oregon.

Here, plaintiffs received all notices required by Oregon law. Yet, even if plaintiffs attempted to concoct *post hoc* allegations of lack of notice, their claim would fail, as the Oregon Legislature provided a specific procedure for judicially challenging improperly noticed foreclosures in ORS 86.742, 86.739, and 86.740.[8] The challenger must satisfy several prerequisites. For example, the challenger must not have had actual notice of the sale 25 days in advance. ORS 86.739(1)(b); ORS 86.742(1). The challenger must also show that he or she can redeem or would have and could have cured the default by clear and convincing evidence. ORS 86.742(1); (2)(c) and (3); *see also* ORS 88.030 (providing that omitted junior lien holders have a right of redemption). Only after satisfying these evidentiary burdens may an action alleging improper foreclosure go forward. ORS 86.742(3). The remedies set forth in ORS 86.742 are "the sole remedies" available to persons entitled to receive, but who did not get, notice. ORS 86.742(6). Notably plaintiffs have not asserted, and cannot assert, that they can satisfy any of those prerequisites. Indeed plaintiffs' claims fail from inception because they had both statutory and actual notice, plus an opportunity to cure, but failed to do so.

Plaintiffs in other wrongful foreclosure cases pending in Oregon have argued that the tender requirement of ORS 86.742(3) only applies to claims concerning defective statutory

---

[8] Under ORS 86.757 and 86.759, a borrower who wants to cure can demand an accounting from the trustee, requesting the exact amount of money required to cure and the specific deadline for curing. If the exact amount is not known to the trustee, the trustee can give an estimate.

PAGE 10 - MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

notice. But that argument, if made by plaintiffs here, is necessarily at odds with the text and context of the OTDA, as well as the Legislature's intent, because it would produce an absurd result—parties who *do not* receive notice under ORS 86.742 would be required to prove that they could have and would have cured by clear and convincing evidence or that they can now redeem (a high evidentiary burden), but parties who *do* receive proper notice (such as plaintiffs here) would be exempt from any tender requirement. The Legislature simply could not have intended to provide greater protection to borrowers who *have* notice of the sale than to borrowers who have *no* notice of the sale.[9] Indeed, the opportunity (and requirement) to cure provided by ORS 86.753 would be rendered meaningless if a party with notice could sit and wait for completion of the foreclosure sale before bringing a challenge and without having to cure. Moreover, such a statutory construction would wholly ignore ORS 86.770(1), which bars parties who had notice from contesting "the validity of the sale[.]" ORS 86.770(1). As previously discussed, the Court may not insert what has been omitted into, or omit what has been inserted from, the OTDA. ORS 174.010. Further, where several provisions are at issue, the Court must strive to construe them in a manner that gives effect to them all. *Id.*

Plaintiffs' post-sale collateral attack on the efficient, non-judicial remedy created by the Legislature—which they bring without alleging the ability to tender and despite receiving full notice—is simply not permitted by the OTDA. The right afforded to defaulting grantors under the OTDA is limited to receiving notice and an opportunity to cure before the sale. Here, plaintiffs were given notice and an opportunity to cure, but could not do so. Once the sale was complete, plaintiffs' time to challenge foreclosure expired, because by statute the sale "forecloses and terminates the [grantors'] interest in the property" and cuts off the right of

---

[9] Indeed, the Legislature imposed additional requirements for grantors who bring post-sale challenges (as opposed to other parties with an interest in the property). *Compare* ORS 86.739(1), 86.740(1) and 86.742(1). In addition to proving a lack of actual notice of sale, a grantor must prove that he or she was not provided with the statutory notice of sale and that he or she informed the trustee, purchaser, or loan servicer, in writing of that fact within 60 days after the third-party purchaser takes possession. ORS 86.739(1). Failure to satisfy these prerequisites bars a grantor's challenge to a completed foreclosure sale.

PAGE 11 - MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

redemption.  ORS 86.770(1).  This is no different than the running of the statute of limitations to bar civil claims.

> c.    **The legislative history of ORS 86.770 likewise confirms that plaintiffs' claim is barred.**  Although the statute's meaning is clear from the text and context, the Court may still consult legislative history to inform its analysis.   *Gaines*, 346 Or. at 170–71; ORS 174.020.  A review of the legislative history of ORS 86.770 confirms that, to achieve the efficient recovery of a lender's assets, the Legislature intended to limit the ability of a person with notice of sale to challenge the sale's validity after its completion.

The OTDA, including what was codified as ORS 86.770, was initially enacted as 1959 SB 117.  The Chairman of the Judiciary Committee, George Layman, characterized the bill's goal as attracting increased lending in Oregon by allowing for more efficient foreclosures.  In a letter included in the legislative record, Layman writes of SB 117 that "without a doubt its main purpose is to make easier repossession and resale of mortgage property."  Listing of Legislative Records in Oregon State Archives pertaining to SB 117, 1959, Separate Exhibit File, Ex. 4 (Mar. 12, 1959 letter of George Layman to Bruce Cullison) (Kiolbasa Decl. Ex. 5 at 2).  Instrumental in achieving this goal was the elimination of the redemption periods that could delay eviction and recovery of the asset by a lender.  *See, e.g.*, Listing of Legislative Records in Oregon State Archives pertaining to SB 117, 1959, Separate Exhibit File, Ex. 4 (Feb. 20, 1959, letter of Richard Collins, Vice President of Schuyler Southwell, Inc. to Senator Pearson) ("The record of redemption under mortgage foreclosures do not support the contention that such a long period of time serves any good purpose, and that with constant changing valuations of real estate today the investor is entitled to a shorter period of acquisition in the event of a default on a real estate loan.") (Kiolbasa Decl. Ex. 5 at 5).  The bill's proponents believed that, without the guarantee that a non-judicial foreclosure sale would be final, financial institutions would be hesitant to make home loans in Oregon.

PAGE 12 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

When ORS 86.770 was amended two years later in 1961, the legislative history once again demonstrates that the statute's primary goal was to attract lending in Oregon by eliminating redemption periods and other potential delays following foreclosure. Committee meeting minutes recount that the amendment's supporters considered that "the sole purpose of the law is to make repossessing easier." Minutes, Committee on State & Federal Affairs, 1961 SB 397, Apr. 24, 1961 (Statement of Leslie Payton, Portland Board of Realtors) (Kiolbasa Decl. Ex. 5 at 10–11). The bill's supporters voiced concern over the "at least 18 months" necessary to foreclose a mortgage judicially, which had caused investors to be "extremely reluctant" to invest in Oregon. Minutes, Senate Judiciary Committee, 1961 SB 397, Mar. 13, 1961 (Statement of Wylie Bucher, Vice President of Commonwealth, Portland) (Kiolbasa Decl. Ex. 5 at 8); *see also* Minutes, Committee on State & Federal Affairs, 1961 SB 397, Apr. 24, 1961 (Statement of Wylie Bucher, Vice President of Commonwealth, Portland) ("Eastern investors are not going to buy loans out here when it takes 18 months to two years to get the property back.") (Kiolbasa Decl. Ex. 5 at 10). The legislature wanted to ensure it would not "take up to two years to evict a person from his home for nonpayment on the loan" (a period when "extensive damage" might also be "done to the property"). Minutes, Senate Committee on Judiciary, 1961 SB 397, Mar. 31, 1961 (Statement of Senator Goode) (Kiolbasa Decl. Ex. 5 at 9). A speedy—and final— foreclosure process was thus necessary to attract lenders in the state. *See, e.g.*, Minutes, Senate Judiciary Committee, 1961 SB 397, Mar. 31, 1961 (Statement of Senator Yturri) (Senator Yturri "told the committee that he was convinced this bill would make more money available in Oregon.") (Kiolbasa Decl. Ex. 5 at 9); Minutes, Committee on State & Federal Affairs, 1961 SB 397, Apr. 24, 1961, (Statement of Jim Scoggins, Executive Secretary, Salem Home Builders) (describing the inability "to secure financing" which would be addressed by this bill) (Kiolbasa Decl. Ex. 5 at 11). ORS 86.770 served the legislature's goals because it expressly extinguished a party's interest in property, allowing for finality of the foreclosure sale.

PAGE 13 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

In short, the text, context and legislative history all show that the Legislature intended ORS 86.770 to bar post-sale foreclosure challenges to all parties who receive notice of the impending sale—including plaintiffs here.

**B.     The Amended Complaint Must Be Dismissed For Failure to Join an Indispensable Party.**

Even if plaintiffs are not barred from bringing this action, the entire Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) because plaintiffs have filed to name a party that is necessary for relief to be afforded.   Plaintiffs have not named the third party purchaser of the Property, NW Property, as a party to this action.   As a result, complete relief cannot be achieved and the purchaser's interests are put at substantial risk.

**1.     Standard of Review.**  Rule 12(b)(7) provides for the dismissal of an action "for failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  Rule 19(a)(1)(A) provides:  "[a] person who is subject to service of process and whose joinder would not deprive the court of subject-matter jurisdiction must be joined as a party if * * * in that person's absence, the court cannot accord relief among existing parties."   The Ninth Circuit Court of Appeals has summarized the requirements of Rule 19 as follows:

> A Rule 19 motion poses three successive inquiries.  First, the court must determine whether a nonparty should be joined under Rule 19(a).   That nonparty (or "absentee") is now referred to as a "person required to be joined if feasible."  If an absentee meets the requirements of Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined.  Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee or whether the action must be dismissed.

*E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) *cert. denied*, 132 S. Ct. 91, 181 L. Ed. 2d 21 (U.S. 2011) (internal citations and quotations omitted).

A nonparty in whose absence an action must be dismissed is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be

PAGE 14 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1855).

    **2.    NW Property is an indispensable party because its established interest in the Property is threatened by plaintiffs' lawsuit.**  Rule 19(a)(1)(A) provides: "[a] person who is subject to service of process and whose joinder would not deprive the court of subject-matter jurisdiction must be joined as a party if * * * in that person's absence, the court cannot accord relief among existing parties."  NW Property clearly must be joined because it purchased the Property at the September 2010 foreclosure sale, and its interest is threatened by the relief plaintiffs seek.

    In order to determine whether a party must be joined under Rule 19, the courts require more than a mere financial stake, but do not necessarily require the interest at stake to be "property in the sense of the due process clause."  *Cachil Dehe Band of Wintun Indians v. California*, 547 F.3d 962, 970 (9th Cir. 2009) (citations omitted).  However, "[n]o decree can be entered affecting the title to property or cancelling any cloud thereon unless all of the parties interested in the title or in the particular cloud and who will be directly affected by any judgment that may be rendered are properly before the Court."  *McShan v. Sherrill*, 283 F.2d 462, 463–64 (9th Cir. 1960) (internal citation omitted).

    In this action, plaintiffs ask the Court to void the September 2010 trustee's sale, which would effectively invalidate NW Property's purchase, and re-vest legal title to the Property in plaintiffs' names.  (Am. Compl. ¶¶ 58–60.)  Because of the relief sought by plaintiffs, there is no question that NW Property is an indispensable party to this action, and that plaintiffs' Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(7).

**C.    Each of Plaintiff's Individual UTPA Claims Fail to State a Claim for Relief.**

    Even if plaintiffs' claims survive past the issues identified above, their UTPA claims must be dismissed for independent reasons because they fail to state a claim for relief.

PAGE 15 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1.      **Legal Standard.**  A complaint must be dismissed when it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Generally, a complaint can survive a motion to dismiss if it meets the minimal pleading requirements of Rule 8(a).  However, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (citing *Twombly*, 550 U.S. at 556).  In *Iqbal*, the Court reasoned that the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citing *Twombly*, 550 U.S. at 557).

"[For] a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling plaintiff" to relief.  *Moss v. U.S. Secret. Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

2.      **Plaintiffs' attempt to state a claim for relief under the UTPA fail for a host of reasons**.  Plaintiffs attempt to state two claims under UTPA, ORS 646.605, *et seq*.  (Am. Compl. ¶¶ 22–47.)  These claims fail for an assortment of reasons.  Each will be discussed separately below.

a.      **Plaintiffs do not have standing to bring a claim under ORS 646.607.**  Plaintiffs allege that defendants violated provisions of the UTPA in pursuing foreclosure.  (Am. Compl. at ¶¶ 26, 45.)  Plaintiffs specifically allege, under both Counts I and II, that Defendants

PAGE 16 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

violated ORS 646.607.  Plaintiffs also assert that ORS 646.638 allows them to bring an action to enforce a violation of ORS 646.607.  (Am. Compl. ¶¶ 34, 45.)  However, plaintiffs are mistaken.

The problem that plaintiffs face is that there is no private right of action under ORS 646.607.  ORS 646.638(1) allows private parties to bring suit if they suffer ascertainable loss "as a result of willful use or employment by another person of a method, act or practice declared unlawful *by ORS 646.608*" (emphasis added).  Thus, the UTPA provides a private right of action for violations of ORS 646.608 only, but not ORS 646.607.  *Horton v. Nelson*, 252 Or. App. 611, 619–20 (Oct. 3, 2012).  Plaintiffs' UTPA claim, Counts I and II, brought pursuant to ORS 646.607(1), must be dismissed for lack of standing.

      **b.**      **Plaintiffs' UTPA claims are time-barred.**  To the extent plaintiffs argue that they allege a claim under ORS 646.608, or seek leave to so amend, such attempts fail and should be denied.  Private actions under the UTPA must be commenced "within one year from the discovery of the unlawful method, act or practice."  ORS 646.638(6).  Determining whether "discovery" occurred is a two-step inquiry.  "'First, it must appear that plaintiff had sufficient knowledge to excite attention and put a party upon his guard or call for an inquiry * * *. [Second] [i]f plaintiff had such knowledge, it must also appear that a reasonably diligent inquiry would disclose the fraud."  *McCulloch v. Price Waterhouse LLP*, 157 Or. App. 237, 248, 971 P.2d 414, 420 (1998).

Plaintiffs' allegations arise from language in the trust deed, which plaintiffs executed in 2003.  (Am. Compl. ¶ 8.)  Plaintiffs also allege, under various convoluted theories, that there was some impropriety with the foreclosure process, but again, the foreclosure sale was completed in September 2010, nearly two full years before plaintiffs commenced this action in Multnomah County, well outside the one-year statute of limitations.  (ECF No. 1.)[10]

---

[10]  In Oregon's circuit courts, an action is commenced when the complaint is filed and the summons served on the defendant.  ORS 12.020(1).  Here, whether the court uses the original Complaint's filing date in Multnomah County Circuit Court (June 6, 2012), or the date the Amended Complaint was filed (November 16, 2012) does not impact the outcome because more than one year has passed in either case.

PAGE 17 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiffs have failed to allege how or when they learned of these alleged deceptions, or how plaintiffs were prevented from determining that "MERS" should have been indicated as "MERS®" in the Deeds of Trust. (Am. Compl. ¶ 45.) Furthermore plaintiffs fail to allege how they were prevented from discovering information about MERS, its parent company MERSCORP, or its publicly registered trademark MERS®.

Defendants deny that any violation of the UTPA occurred. However, even if a violation did occur, the language in the trust deed and foreclosure documents would have provided plaintiffs with sufficient knowledge to excite their attention to the possibility of a violation. Even more so, plaintiffs have failed to allege facts (because no such facts exist) that demonstrate that they were somehow prevented from discovering the truth (or, more correctly, the falsity) of the allegations contained in the Amended Complaint upon a reasonably diligent inquiry. The plaintiffs' claims are time-barred and properly subject to dismissal.

       **c.**       **Plaintiffs also fail to state a claim under the UTPA.** Plaintiffs make one generic reference to ORS 646.608(1)(b)(c) and (h) in Count II (and no reference to ORS 646.608 in Count I). (Am. Compl. at ¶ 45.) They do not seek relief under ORS 646.608 (Am. Compl. at 17–18), do not cite its provisions, and fail to allege the elements of a UTPA under ORS 646.608. Even so, if the Court is inclined to read into Count II a UTPA claim under ORS 646.608, plaintiffs failed to allege sufficient facts to state such a claim.

ORS 646.638(1) provides a cause of action to persons who suffer "any ascertainable loss of money or property, real or personal, as a result of willful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608." A "willful violation" occurs when "the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10). Plaintiffs fail to allege the specific provisions at issue or assert factual allegations to support the elements of a UTPA claim brought under ORS 646.608, because they cannot. ORS 646.608 reads, in part:

PAGE 18 - MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

A person engages in an unlawful practice when in the course of the person's business, vocation or occupation the person does any of the following:

* * * *

(b) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services.

(c) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

* * * *

(h) Disparages the real estate, goods, services, property or business of a customer or another by false or misleading representations of fact.

ORS 646.608(1)(b)(c) and (h).

Plaintiffs' Count II is based on the theory that the failure to include the trademark ® from MERS on every deed of trust across the country, including the plaintiffs', MERSCORP and MERS have violated the UTPA. (Am. Compl. at ¶ 45.) Plaintiffs allege that this use of incorrect nomenclature disguised the identity of MERS' "asset-heavy," parent company MERSCORP. (*Id*.) These allegations fail for three reasons.

First, in support of these allegations, plaintiffs argue that the trust deed "*does not* state that Mortgage Electronic Registration Systems, Inc. is MERS." (Am. Compl. ¶ 43 (emphasis added).) Plaintiffs also state the converse, quoting the trust deed, "MERS is Mortgage Electronic Registration Systems, Inc." (*Id*.) In fact, the trust deed does identify Mortgage Electronic Registration Systems, Inc. as MERS, twice. The trust deed includes the following language, at the top of the first page: "Mortgage Electronic Registration Systems, Inc. (MERS) is the Grantee of this Security Instrument." (Am. Compl. Ex. A at 1.) Again, on the first page, the trust deed indicates that "[t]he beneficiary is Mortgage Electronic Registration Systems, Inc. ('MERS')" (*Id*.) Legal documents often establish shorthand references for parties to use throughout the document. Notably, the key case that plaintiffs rely on in their Amended Complaint uses the

PAGE 19 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

very acronym that plaintiffs complain about.  (Am. Compl. at ¶ 29); *Niday v. GMAC Mortgage, LLC*, 251 Or. App. 278, 281, 284 P.3d 1157 (2012) (identifying "Mortgage Electronic Registration Systems, Inc., also known as MERS").  It is unclear, at best, how MERS, identifying itself as Mortgage Electronic Registration Systems, Inc., with the acronym "MERS," is in any way wrongful, confusing, or disparaging.  Indeed, it is not.

Second, plaintiffs assert that "MERS" should have identified itself as MERS® in the trust deed.  Such an assertion is nonsensical.  Using "MERS®" instead of "MERS" to denote the entity Mortgage Electronic Registration Systems, Inc., in the trust deed would only serve to create confusion, not allay it.  And, in fact, would have no legal affect.  "MERS®" is a trademark owned by MERSCORP.  (Am. Compl. ¶ 43.)  MERS® refers to an electronic database system, owned by MERSCORP Holdings, Inc., that "tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers."  *Cervantes*, 656 F.3d at 1038.  The purpose of a trademark is to distinguish the source of goods and services, not to identify a business entity.  ORS 647.005(8).[11]  A trademark cannot own property, cannot act as an agent, or as a beneficiary.  15 U.S.C. § 1127 (definitions of "person" and "trademark;" "trademark includes any word, name, symbol, or device * * * used by a person * * *").  It is merely intellectual property.  Plaintiffs base their UTPA claim, in essence, on claiming that a trademark (MERS®) should have been used as the agent/beneficiary under the trust deed, instead of a corporate entity (MERS), an absurd assertion.

Finally, plaintiffs appear to allege that by not using the ® next to "MERS" in the trust deed plaintiffs are unable to discern that a "deep pocket" parent company, MERSCORP, exists

---

[11] "Trademark" means a word, name, symbol or device or a combination of words, names, symbols or devices that a person uses to identify and distinguish the person's goods, including a unique product, from another person's goods and to indicate the source of the goods, even if the source is unknown.  ORS 647.005(8).  In contrast, "trade name" means a name that a person uses to identify the person's business or vocation.  ORS 647.005(9); 15 U.S.C. § 1127; *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534 (9th Cir. 1989).  The ® symbol gives notice to others that a mark is registered in the U.S. Patent and Trademark Office.  *See* 15 U.S.C. § 1111.  If notice is not given, certain damages may not be recoverable by the registrant of the mark in a suit for infringement.  *Id.*

PAGE 20 - MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

as a potential liable party.  (Am. Compl. ¶ 45.)  However, plaintiffs fail to cite any obligation by MERS to identify its parent corporation in the trust deed.  As a subsidiary, MERS is a separate entity from its parent.   Oregon courts have long respected the corporate form for liability purposes.  *Neidig v. Superior Nat'l Ins. Co.*, 343 Or. 434, 445, 458, 173 P.3d 123 (2007) (stating that "piercing the corporate veil 'is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair plaintiff's injury'") (quoting *Amfac Foods v. Int'l Systems*, 294 Or. 94, 103, 654 P.2d 1092 (1982)).  Thus, it cannot be said that by naming MERS, instead of MERS® or MERSCORP, defendants violated the UTPA.  Plaintiffs' UPTA claim, to the extent it is based on ORS 646.608, must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, MERS and Wells Fargo respectfully request that each of plaintiffs' claims and this lawsuit be dismissed with prejudice, and for such other relief in MERS' and Wells Fargo's favor that this Court deems just.

DATED:  December 21, 2012

LANE POWELL PC


By___/s/  Brian T. Kiolbasa_____
    Pilar C. French, OSB No. 962880
    Brian T. Kiolbasa, OSB No. 112890
    Telephone: 503.778.2100
Attorneys for Mortgage Electronic Registration
Systems, Inc. and Wells Fargo Bank, N.A.

PAGE 21 -  MEMORANDUM IN SUPPORT OF MOTION TO DISMISS